**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON STEVENSON, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>LAMONT NASH; SUZANNE PORTILLO; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-11112-ODW-RAO<br><br>Assigned to: *Honorable Otis D. Wright*<br>*Mag. Judge Rozella A. Oliver*<br><br>**JOINT RULE 26(f) REPORT**<br><br>**Scheduling Order to Issue: May 27, 2025** |

## I. STATEMENT OF THE CASE

### A. Plaintiff's Statement

This civil rights case arises out of the use of the officer-involved shooting of Brandon Stevenson by California Highway Patrol officers Lamont Nash and Suzanne Portillo on July 4, 2021. At approximately 11:00 p.m. on that date, Officers Nash and Portillo attempted to conduct a traffic stop on a two-door Infinity, later identified to be driven by Plaintiff, Brandon Stevenson, on the 210 freeway in the City of Pasadena, California. Officers Nash and Portillo pursued Plaintiff westbound on the 210 freeway and at some point during the pursuit, a secondary CHP unit joined.

The pursuit proceeded southbound on the 101 freeway before the Infinity exited the freeway and drove to the end of East Commercial Street, where the roadway was blocked by a metal fence. Officer Nash stopped his patrol vehicle behind the Infinity as the Infinity executed a three-point turn. Officer Nash exited his vehicle, drew his firearm, and stood behind his vehicle's driver's door. Officer Portillo, who was a passenger in the patrol vehicle driven by Officer Nash, exited the vehicle, drew her firearm, and stood behind the vehicle's front passenger door.

Once Plaintiff completed the three-point turn in the Infinity, he attempted to drive the vehicle around the Officer Nash's patrol vehicle, through the open space between the patrol vehicle and a nearby retaining wall. As the Infinity navigated its way through the open space, Officers Nash and Portillo discharged their firearms into the Infinity, striking Plaintiff several times. On information and belief, Officer Nash fired approximately four shots into the driver's side of the Infinity. On information and belief, Officer Portillo fired approximately eight shots into the Infinity.

The secondary CHP unit arrived just as the Infinity began moving through the open space between Nash's patrol vehicle and the nearby retaining wall and drove to a position behind and perpendicular to Nash's patrol vehicle, causing the Infinity to

collide with the secondary unit as it traveled through the open space between Nash's patrol vehicle and the nearby retaining wall.

At all relevant times, Plaintiff was unarmed and did not pose an immediate threat of death or serious bodily injury to the officers or anyone else. On information and belief, despite knowing that Plaintiff had been seriously injured by the officers, the officers failed to timely summon medical care or permit medical personnel to treat Plaintiff after the shooting.

Plaintiff sustained serious physical injuries and incurred financial loss and expenses from this incident. Plaintiff also endured pain and suffering and emotional distress as a result of this incident.

**B. Defendants' Statement**

On July 4, 2021, at approximately 10:55 p.m. California Highway Patrol Officers Suzanne Portillo and Lamont Nash, were on patrol and traveling westbound on Interstate 210, also known as the Foothill Freeway, in the vicinity of Rosemead Boulevard. Officer Nash observed a vehicle approaching them from the rear at a high rate of speed. The vehicle, a black Infiniti, model Q60, passed their patrol vehicle and Officer Nash began a bumper pace. Officer Nash was able to obtain a bumper pace of 91 miles per hour, ("mph"), within a marked 65 mph zone. During the bumper pace, the suspect's vehicle weaved from the #2 lane and into the #3 lane and straddled the #2 and #3 lanes. At this time, Officer Nash activated the patrol vehicle's Code-3 emergency lights for a violation of California Vehicle Code section 22349 (a), exceeding 65 mph, and California Vehicle Code section 21658 (a), unable to maintain a lane.

Officer Portillo also advised the Los Angeles Communications Center they were following a "Slow to yield" vehicle as they approached Fair Oaks Avenue. Although Officer Nash requested air support, he was advised air support was grounded due to the July 4th fireworks in the area.

The suspect's vehicle transitioned from westbound Interstate 210 to westbound State Route 134 also known as the Ventura Freeway. At 10:56 p.m. the driver, who was later identified as Mr. Brandon Lamar Stevenson, failed to yield and a pursuit ensued on westbound State Route 134, east of State Route 2, also known as the Glendale Freeway.

At 11:00 p.m., the pursuit transitioned to southbound State Route 2. Mr. Stevenson's vehicle, with the CHP and patrol vehicles from other law enforcement agencies exited State Route 2 to Glendale Boulevard and traveled southbound on Glendale Boulevard.

Mr. Stevenson 's vehicle turned northbound onto Palo Alto Street and at 11:07 p.m. and the pursuit entered southbound United State (US) 101, also known as the Hollywood Freeway.

At 11:09 p.m., Mr. Stevenson's vehicle exited at Alameda Street from southbound US 101 and proceeded eastbound on Commercial Street.

Mr. Stevenson's vehicle continued eastbound on Commercial Street and failed to stop for a stop sign within the intersections of eastbound Commercial Street and Vignes Avenue and at Commercial Street and Center Street. Mr. Stevenson's vehicle then made a southbound turn from eastbound Commercial Street and was forced to come to a stop due to the roadway being a dead-end.

Officers Nash and Portillo then exited their patrol vehicle from their respective doors, drew their respective service weapons and gave commands to Mr. Stevenson. Mr. Stevenson reversed his vehicle in a westerly direction.

Officers Nash and Portillo were standing outside of their patrol vehicle with their weapons drawn. Officer Nash gave two distinct commands to Mr. Stevenson, "Stop the car! Stop the car!" Another officer pulled his patrol vehicle to the left of Officer Nash's patrol vehicle in order to take the left "V" position to assist with the felony stop. Mr. Stevenson then began to accelerate in a northerly direction while

turning the front wheels of his vehicle in the direction of Officer Nash and the left side of the patrol vehicle.

At 11:10 p.m., Officers Portillo and Nash, reasonably believed Mr. Stevenson was going to use his vehicle as a weapon to strike and cause serious bodily injury or death to Officer Nash as he accelerated towards Officer Nash. Consequently, Officers Portillo and Nash discharged their respective weapons at the rapidly approaching vehicle. Officer Nash discharged four rounds from his weapon while standing behind the patrol vehicle's open left front door and while backpedaling from the open left front door towards the left rear of the patrol vehicle. Officer Portillo discharged eight rounds from her weapon while standing behind the patrol vehicle's open right front door. Mr. Stevenson's vehicle continued in a northerly direction.

The left front corner of Mr. Stevenson 's vehicle's vehicle collided into the right front fender of another Officer's patrol vehicle with such great force that it caused the impacted patrol vehicle to spin in a counterclockwise direction until the patrol vehicle came to rest facing in a northerly direction. After Mr. Stevenson's vehicle collided into the patrol vehicle it came to rest facing in a northerly direction. The rounds discharged by both officers struck the suspect's vehicle in various locations, as well as striking Mr. Stevenson.

When Officer Nash was asked what was going through his mind when Mr. Stevenson's vehicle was accelerating towards him, Officer Nash stated, "Fear. I was fearful for my life ….. He's going to either hit me or crush me between the door and the vehicle. "

When Officer Portillo was asked what was going through her mind when Mr. Stevenson's vehicle was accelerating towards Officer Nash, Officer Portillo stated, "When he accelerated towards my partner, I thought he was trying to kill my partner. That he was trying to run him over ...When he came towards our car, I thought like my partner was going to die. So, my initial thought -- well, what I felt I

needed to do was stop him from doing that and stop him from injuring my partner. In order to do that, I had to use deadly force."

## II. SUBJECT MATTER JURISDICTION

This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.

## III. LEGAL ISSUES

**Plaintiff's Statement:**

1. Whether Plaintiff's rights against excessive force, including excessive deadly force, under the Fourth Amendment were violated when Defendants Lamont Nash and Suzanne Portillo shot at Plaintiff;
2. Whether Plaintiff's rights against denial of medical care, under the Fourth Amendment, were violated following the use of force by Defendants Lamont Nash and Suzanne Portillo; and
3. Damages.

**Defendants' Statement**:

(1) Whether officers used reasonable force under the circumstances;

(2) Whether officers denied medical care to Plaintiff in violation of the constitution;

(3) Whether the officers interfered with Plaintiff's Fourth Amendment rights;

(4) Whether the officers are entitled to qualified immunity on the federal claims;

(5) The extent of Plaintiff's comparative fault;

(6) The nature and extent of the injuries proximately caused by the actions of officers; and

(7) The nature and extent of Plaintiff's damages, including punitive damages.

## IV. DAMAGES

Plaintiff is unable to provide a realistic range of probable compensatory damages at this time but expect that these damages will be determined as discovery progresses. Plaintiff also expects to pursue punitive damages and attorney fees in amounts to be later determined.

## V. INSURANCE

Defendant, State of California is self-insured pursuant to Government Code section 11007.4.

## VI. MOTIONS

Plaintiff does not anticipate needing to seek leave to file an amended pleading or adding new parties but reserves the right to do so. Plaintiff does not believe there are any other issues which may be determined by motion at this time. The parties anticipate filing discovery motions if needed. The parties propose a Motion to Amend the Pleadings deadline of **September 22, 2026**.

Defendants anticipate filing a motion for summary judgment, and motions in limine, including a motion to bifurcate punitive damages, if the case proceeds to trial.

## VII. COMPLEXITY

The parties agree that this is not a complex case and therefore is not subject to the Manual for Complex Litigation.

## VIII. STATUS OF DISCOVERY

Discovery has not begun. The parties will exchange initial disclosures on **June 30, 2025.**

## IX. DISCOVERY PLAN

Plaintiff anticipates on taking the deposition upon oral examination of the involved officers, any additional officers who responded to the scene after the

incident, the officers' supervisors, medical personnel, and percipient witnesses. The additional officers, supervisors, medical personnel, and percipient witnesses have not yet been identified.

Plaintiff anticipates on serving written interrogatories, requests for admission, and requests for production of documents on the issues of liability for unreasonable detention and arrest, excessive and unreasonable force, and related municipal liability claims.

The parties intend to enter into a stipulated protective order regarding various confidential documents, so as to facilitate relevant discovery and disclosures while preserving certain privileges as well as important and statutory confidentiality interests.

Defendants anticipate deposing plaintiff. Defendants may also depose other witnesses to the incident and other witnesses with knowledge regarding plaintiff's injuries and damages claims. Defendants also intend to issue subpoenas for medical and employment records of plaintiff and records in the possession of other law enforcement agencies. By way of written discovery, defendants intend to conduct discovery regarding plaintiff's contentions, factual bases and evidentiary bases for his liability claims, and plaintiff's damages claims.

The parties do not see any issues regarding electronically stored information pursuant to Rule 26(f)(3)(C) in this case.

The parties further do not propose that the Court issue any other orders under Federal Rules of Civil Procedure 16(b), 16(c), or 26(c).

The parties propose a Fact Discovery Cut-Off date, including hearings all motions related to Fact Discovery, of **March 27, 2026**.

## X.    EXPERT DISCOVERY

The parties propose an Initial Expert Exchange date of **April 24, 2026**, a Rebuttal Expert Exchange date of **May 22, 2026**, and an Expert Discovery Cut-Off

date, including hearings on all motions related to Expert Discovery, of **June 19, 2026**.

## XI. DISPOSITIVE MOTIONS

Plaintiff does not currently anticipate filing a dispositive motion but reserves the right to do so.

Defendants anticipate filing a motion for summary judgment, or, in the alternative, partial summary judgment. Anticipated issues/claims that may be determined by a motion for summary judgment include, but are not limited to, whether the officers' actions were reasonable under the circumstances, whether the officers summoned emergency medical services, and whether the officers are entitled to qualified immunity or immunities under federal law. The parties propose a Dispositive Motion Deadline of **July 13, 2026**.

## XII. SETTLEMENT/ADR PROCEDURE SELECTION

The parties have not discussed settlement and wish to conduct further discovery before addressing the possibility of settlement. The parties propose a settlement conference deadline of **August 24, 2026**.

The parties elect to proceed with ADR Procedure No. 2.

## XIII. TRIAL

All parties have requested a jury trial. The parties propose a Final Pre-Trial Conference date of **September 28, 2026,** and a Trial Date of **October 20, 2026**. The parties estimate that the trial will take approximately 7-10 court days.

## XIV. TRIAL COUNSEL

Plaintiff: Dale K. Galipo (lead) and Hang D. Le.

Defendants: Deputy Attorney General, David Klehm.

## XV. INDEPENDENT MASTER

The parties agree that this case does not require the appointment of a master or independent scientific expert.

## XVI. OTHER ISSUES

There are currently no other known issues. The parties do not believe there are any other issues affecting the status or management of the case, and do not believe there is need for a case management conference.

DATED: May 20, 2025              LAW OFFICES OF DALE K. GALIPO

                                 By  _____/s/ Hang D. Le_____
                                     Dale K. Galipo
                                     Hang D. Le
                                     Attorneys for Plaintiff Brandon Stevenson

DATED: May 20, 2025              ROB BONTA
                                 Attorney General of California
                                 DONNA M. DEAN
                                 Supervising Deputy Attorney General

                                 */s/ David Klehm*

                                 DAVID KLEHM
                                 Deputy Attorney General
                                 Attorneys for Defendants Lamont Nash and Suzanne Portillo

*The filer, Hang D. Le, hereby attests that all other signatories listed, and on whose behalf the filing is submitted, concur with the filing's content and have authorized the filing.