**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367S
Tel: (818) 347-3333; Fax: (818) 347-4118

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

BRANDON STEVENSON, an individual;

Plaintiff,

vs.

LAMONT NASH; SUZANNE PORTILLO; and DOES 1-10, inclusive,

Defendants.

Case No. 2:24-cv-11112-ODW-RAO

Assigned to:
*Honorable Otis D. Wright*
*Mag. Judge Rozella A. Oliver*

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Final Pretrial Conference:
Date: October 13, 2026
Time: 1:30 p.m.
Crtrm: 5D

Trial:
Date: November 3, 2026

# PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## I. SUMMARY OF FACTUAL CONTENTIONS

In the evening hours of July 4, 2021, California Highway Patrol Officers Lamont Nash and Suzanne Portillo noticed a black Infiniti Q60, later determined to have been driven by Plaintiff Brandon Stevenson, approaching the rear of their patrol vehicle. The officers allegedly observed the Infiniti drive at a high rate of speed and made the decision to initiate a traffic stop on the vehicle. The officers were not able to see inside the vehicle to determine whether the vehicle was being driven by a male or female or whether there were passengers in the vehicle. The officers allegedly activated their overhead lights and sirens but the Infiniti did not pull over, resulting in a pursuit for failure to yield. Another CHP unit, driven by Officer Morgan Oakley, later joined the pursuit. The officers claimed the pursuit reached up to 70 to 90 miles per hour in speed while on the freeway.

At some point, the pursuit proceeded onto the 101 freeway until the Infiniti took the Alameda exit off of the southbound 101 and proceeded to an industrial area in downtown Los Angeles. As the pursuit proceeded to a cul-de-sac. Once the Infiniti reached the end of the cul-de-sac, it stopped, with the front of the vehicle facing a retaining wall on the side of the cul-de-sac. Once Officer Nash and Portillo entered the cul-de-sac, they stopped their patrol vehicle in the middle of the road and both officers exited the vehicle with their guns drawn. Officer Nash positioned himself behind the "v" of his driver's side door while Officer Portillo positioned herself next to the front passenger side of the patrol vehicle. Upon seeing the officers with their guns drawn, pointing their guns at the Infiniti, Plaintiff Stevenson backed his vehicle up, before moving his vehicle forward to drive in the space between the patrol vehicle's driver's side and the retaining wall. Both officers opened fire at the Infiniti was it proceeded forward and through the space between the patrol vehicle and the retaining wall.

Both officers claimed that they believed the Infiniti was heading directly toward Officer Nash and would strike Officer Nash. However, in her deposition, Officer Portillo admitted that she did not know where Officer Nash was when she opened fire at the Infiniti. Further, video of the shooting, partially captured on the MVARS of the officer's patrol unit and Officer Oakley's patrol unit, showed that Officer Nash was able to step back and out of the pathway of the Infiniti. Additionally, Officer Nash testified that he believed there was approximately 10 feet of space between his open door and the retaining wall and that he believed the width of the Infiniti to be approximately six feet. Importantly, measurements that were taken after the incident indicated that there was approximately 15 feet between the driver's side open door of Officer Lamont's vehicle and the retaining wall—giving Plaintiff Stevenson ample space to navigate between the two without hitting anything. Indeed, Plaintiff Stevenson was able to drive in between the space without hitting the open driver's door of the patrol vehicle.

As Plaintiff Stevenson drove forward and through the open space between the patrol vehicle and the retaining wall, Officer Oakley arrived on scene and directed his vehicle toward that open space, intending to set up a V formation to effectuate a high-risk stop. As both vehicles converged on the same location, a collision occurred. After the collision, the officers pulled Plaintiff Stevenson out of the vehicle to render aid. Plaintiff Stevenson sustained gunshot wounds to the left side of his body, including his neck, shoulder, and leg.

## II. CONTENTIONS OF LAW

### Claim 1: Fourth Amendment—Excessive Force

This survival claim, brought by Plaintiff Brandon Stevenson, contends that Defendants Lamont Nash and Suzanne Portillo used excessive force against Plaintiff in violation of his Fourth Amendment rights and 42 U.S.C. § 1983. Plaintiff seeks compensatory damages for his injuries, including for his disability, impairment, disfigurement, physical and mental pain and suffering, inconvenience, grief, anxiety,

and humiliation, as well as for the reasonable value of past and future medical care treatment, and services. Plaintiff also seeks punitive damages, costs, and statutory attorneys' fees under 42 U.S.C. § 1988 on this claim..

Elements:

1. Lamont Nash and Suzanne Portillo acted under color of law;
2. Lamont Nash and Suzanne Portillo used excessive force against Brandon Stevenson;
3. The excessive force caused injury, damage, loss, or harm to Brandon Stevenson.

*See* Ninth Circuit Manual of Model Jury Civil Instructions, No. 9.27.

Key Evidence: (1) testimonies of defendants; (2) testimonies of officer percipient witnesses; (3) testimony of plaintiff; (4) testimonies of plaintiffs' expert witnesses; (5) videos capturing the incident; (6) still shots from videos capturing the incident; (7) forensic evidence; (8) diagram of incident scene; (9) plaintiff's medical records and bills.

## III. ANTICIPATED EVIDENTIARY ISSUES

Plaintiff anticipates on filing the following motions *in limine*:

1. Plaintiff's Motion *in Limine* No. 1 to Exclude Evidence or References to Information Not Known to Shooting Officers at the Time of the Incident and/or Information Acquired After the Shooting;

2. Plaintiff's Motion *in Limine* No. 2 to Exclude Certain Testimony and Opinion from Defense Police Practices Expert Clarence Chapman;

3. Plaintiff's Motion *in Limine* No. 3 to Exclude Evidence or References to Comments Made by Plaintiff Brandon Stevenson After the Shooting;

4. Plaintiff's Motion *in Limine* No. 4 to Exclude Evidence or References Testimony, Opinions, or Argument That It Was Permissible to Shoot Plaintiff for Merely Fleeing.

//

**IV. <u>ANTICIPATED ISSUES OF LAW</u>**

None at this time.

**V. <u>BIFURCATION</u>**

Plaintiff requests that the issue of the amount of punitive damages to be awarded, if any, be bifurcated from the remainder of the trial. At this time, Plaintiff does not request bifurcation of any other issues. However, subject to the Court's rulings on Plaintiffs' pending Motions *in Limine*, Plaintiffs may request bifurcation of liability and damages if the Court allows admission of certain prejudicial evidence solely on the basis that such evidence is relevant only to damages.

**VI. <u>JURY TRIAL</u>**

The issues herein are triable to a jury as a matter of right. The parties made a timely demand for trial by jury.

**VII. <u>ATTORNEYS' FEES</u>**

If Plaintiff prevails at trial, he is entitled to attorneys' fees under 42 U.S.C. § 1988, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

**VIII. <u>ABANDONMENT OF ISSUES</u>**

Plaintiff voluntarily abandons/dismisses the following claims: Fourth Amendment—Denial of Medical Care claim.

Respectfully submitted,

DATED: January 5, 2026 LAW OFFICES OF DALE K. GALIPO

By *\/s/ Hang D. Le*
Dale K. Galipo
Hang D. Le
Attorneys for Plaintiff