ROB BONTA
Attorney General of California
ROLANDO PASQUALI
Supervising Deputy Attorney General
DAVID KLEHM
Deputy Attorney General
State Bar No. 165302
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 738-9733
Fax: (916) 732-7920
E-mail: David.Klehm@doj.ca.gov
*Attorneys for Defendants*
*Lamont Nash and Suzanne Portillo*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CENTRAL DISTRICT

| | |
|---|---|
| **BRANDON STEVENSON,**<br><br>Plaintiff,<br><br>**v.**<br><br>**LAMONT NASH, SUZANNE PORTILLO AND DOES 1 THROUGH 10, INCLUSIVE,**<br><br>Defendants. | 2:24-cv-11112-ODW(RAOx)<br><br>**MEMORANDUM OF CONTENTIONS OF FACT AND LAW BY DEFENDANTS LAMONT NASH AND SUZANNE PORTILLO**<br><br>Courtroom: 5D<br>Judge: The Honorable Otis D. Wright, II<br>Final Pretrial Conference:<br>Date: October 13, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5D<br>Trial Date: November 3, 2026<br>Action Filed: 12/26/2024 |

Defendants, Lamont Nash and Suzanne Portillo submit the following Memorandum of Contentions of Fact and Law, pursuant to L.R. 16-4.

**PLAINTIFF'S CLAIMS and FACTUAL SUMMARY**

The Complaint, ECF No. NO. 1 filed on December 26, 2024, is the operative pleading. Plaintiff, Brandon Stevenson is pursuing one Federal law claim relating to

the reasonableness of Defendants, Lamont Nash and Suzanne Portillo's use of force against plaintiff on July 4, 2021.

This is a civil rights case arising out of the officer-involved shooting of Brandon Stevenson by California Highway Patrol officers, Lamont Nash and Suzanne Portillo during a pursuit in the late evening of July 4, 2021.

**<u>Defendants' Statement</u>**

On July 4, 2021, at approximately 10:55 p.m. California Highway Patrol Officers Suzanne Portillo and Lamont Nash, were on patrol and traveling westbound on Interstate 210, also known as the Foothill Freeway, in the vicinity of Rosemead Boulevard. Officer Nash observed a vehicle approaching them from the rear at a high rate of speed. The vehicle, a black Infiniti, Model Q60 "Red Series" sports sedan which contained the most powerful 400-horsepower engine available on the Q60 model, passed their patrol vehicle and Officer Nash began a bumper pace. Officer Nash was able to obtain a bumper pace of 91 miles per hour, ("mph"), within a marked 65 mph zone. During the bumper pace, the suspect's vehicle weaved from the #2 lane and into the #3 lane and straddled the #2 and #3 lanes. At this time, Officer Nash activated the patrol vehicle's Code-3 emergency lights for a violation of California Vehicle Code section 22349 (a), exceeding 65 mph, and California Vehicle Code section 21658 (a), unable to maintain a lane.

Officer Portillo also advised the Los Angeles Communications Center they were following a "Slow to yield" vehicle as they approached Fair Oaks Avenue. Because of the behavior of the vehicle's driver, and the risk to public safety if the vehicle's movements continued unchecked, Officer Nash requested air support. The officers were advised that air support was grounded due to the July 4th fireworks in the area.

The suspect’s vehicle transitioned from westbound Interstate 210 to westbound State Route 134 also known as the Ventura Freeway. At 10:56 p.m. the driver, who was later identified as Mr. Brandon Lamar Stevenson, failed to yield and a pursuit ensued on westbound State Route 134, east of State Route 2, also known as the Glendale Freeway.

At 11:00 p.m., the pursuit transitioned to southbound State Route 2. Mr. Stevenson’s vehicle, with the CHP and patrol vehicles from other law enforcement agencies exited State Route 2 to Glendale Boulevard and traveled southbound on Glendale Boulevard.

Mr. Stevenson 's vehicle turned northbound onto Palo Alto Street and at 11:07 p.m. and the pursuit entered southbound United State (US) 101, also known as the Hollywood Freeway.

At 11:09 p.m., Mr. Stevenson's vehicle exited at Alameda Street from southbound US 101 and proceeded eastbound on Commercial Street.

Mr. Stevenson's vehicle continued eastbound on Commercial Street and failed to stop for stop signs at two different intersections: Commercial Street and Vignes Avenue; and Commercial Street and Center Street. Mr. Stevenson's vehicle then made a southbound turn from eastbound Commercial Street and was forced to come to a stop due to the roadway being a dead-end street blocked by a high metal chain link fence.

Officers Nash and Portillo immediately exited their patrol vehicle from their respective doors, drew their respective service weapons and gave commands to Mr. Stevenson. Mr. Stevenson reversed his vehicle and made a three-point turn before accelerating rapidly towards Defendants.

Officers Nash and Portillo were standing outside of their patrol vehicle with their weapons drawn. Officer Nash gave two distinct commands to Mr. Stevenson, "Stop the car! Stop the car!" Another Officer pulled his patrol vehicle to the left of Officer Nash's patrol vehicle in order to take the left "V" position to assist with the felony stop. Mr. Stevenson then began to accelerate rapidly in a northerly direction while turning the front wheels of his vehicle in the direction of Officer Nash and the left side of the patrol vehicle while leaving skid marks from the Q60 during this maneuver.

At 11:10 p.m., Officers Portillo and Nash, reasonably believed Mr. Stevenson was using his vehicle as a weapon in an attempt to strike Officer Nash as he accelerated towards Officer him. Consequently, Officers Portillo and Nash discharged their respective weapons at the rapidly accelerating vehicle. Officer Nash discharged four rounds from his weapon while standing behind the patrol vehicle's open left front door and while backpedaling from the open left front door towards the left rear of the patrol vehicle. Officer Portillo discharged eight rounds from her weapon while standing behind the patrol vehicle's open right front door. Mr. Stevenson's vehicle continued in a northerly direction.

The left front corner of Mr. Stevenson 's vehicle collided into the right front fender of another Officer's patrol vehicle with such great force that is caused the impacted patrol vehicle to spin 70 degrees in a counterclockwise direction until the patrol vehicle came to rest facing in a northerly direction. After Mr. Stevenson's vehicle collided into the patrol vehicle, it came to rest facing in a northerly direction. The rounds discharged by both officers struck the suspect's vehicle in various locations, as well as striking Mr. Stevenson.

When Officer Nash was asked what was going through his mind when Mr. Stevenson's vehicle 's vehicle was accelerating towards him, Officer Nash stated,

"Fear. I was fearful for my life ….. He's going to either hit me or crush me between the door and the vehicle." "

When Officer Portillo was asked what was going through her mind when Mr. Stevenson's vehicle was accelerating towards Officer Nash, Officer Portillo stated, "When he accelerated towards my partner, I thought he was trying to kill my partner. That he was trying to run him over ...When he came towards our car, I thought like my partner was going to die. So, my initial thought -- well, what I felt I needed to do was stop him from doing that and stop him from injuring my partner. In order to do that, I had to use deadly force. "

Plaintiff was found guilty of Felony Evasion of a Peace Officer after a jury trial in December, 2023. L.A. Superior Court Case No. BA496776.

**Legal Theories**

Claim 1: Plaintiff, Brandon Stevenson, claims pursuant to 42 U.S.C. § 1983 that Defendants, Lamont Nash and Suzanne Portillo 's use of force against plaintiff violated his Fourth Amendment rights. (1st Cause of Action);

**Elements of Plaintiffs' Claims**

**Claim 1**: The elements of a section 1983 excessive force claim arising under the Fourth Amendment are:

1. Defendants, Lamont Nash and Suzanne Portillo acted under color of state law;

2. Defendants, Lamont Nash and Suzanne Portillo intentionally seized decedent's person;

3. The use of force was objectively unreasonable under all of the circumstances;

4. The use of force caused decedent harm; and

5. The defendant's conduct was an actual cause of the claimed injury.

*See* Ninth Circuit Model Civil Jury Instrs. 9.3, 9.20, 9.25*; Graham v. Connor,* 490 U.S. 386, 395 (1989).

In determining whether the officer used excessive force, all of the circumstances known to the officer on the scene must be considered, including:

(1) the nature of the crime or other circumstances known to the officer at the time force was applied;

(2) whether the decedent posed an immediate threat to the safety of the officers or to others;

(3) whether the decedent was actively resisting arrest or attempting to evade arrest by flight;

(4) the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) the type and amount of force used;

(6) the availability of alternative methods to take the decedent into custody;

(7) the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent; and

(8) whether it was practical for the officer to give warning of the imminent use of force, and whether such warning was given.

(9) whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

(10) whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.

Ninth Circuit Model Civil Jury Inst. 9.25.

In general, all claims of excessive force, whether deadly or not, should be analyzed under the objective reasonableness standard of the Fourth Amendment as

applied in *Scott v. Harris*, 550 U.S. 372, 381-85 (2007), *Graham v. Connor*, 490 U.S. 386, 397 (1989), *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985), and *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

In assessing reasonableness, the fact-finder should give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (citation omitted). In addition, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

The Ninth Circuit has repeatedly emphasized that the most important factor is "whether the suspect posed an immediate threat to the safety of the officers or others." *See, e.g.*, *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (internal quotation marks omitted); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020); *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). It is well-established that where a suspect threatens an officer with a weapon or where the officer has probable cause to believe that the suspect poses a threat of death or serious physical harm to the officer or others, the officer is justified in using deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Wilkinson v. Torres,* 610 F.3d 546, 546 (9th Cir. 2010).

**DEFENDANTS' AFFIRMATIVE DEFENSES**

**Legal Theories**

Defendants have several key affirmative defenses:

Affirmative Defense 1: *Heck v Humphey* 512 U.S. 477 (1994)

Affirmative Defense 2: Qualified Immunity

**Elements of Affirmative Defenses**

Affirmative Defense 1:

1. A civil verdict for plaintiff would undermine the validity of the criminal conviction for felony evasion of a peace officer.

When plaintiff was convicted of felony evasion, the jury had to find that plaintiff was fleeing with a "willful and wanton disregard for safety" from a peace officer. Plaintiff's claim that he was driving safely or merely trying to squeeze through a "narrow opening" without endangering anyone, directly contradicts the criminal jury's finding that Plaintiff's driving was inherently dangerous as he was evading Defendants, Sgt. Nash and Officer Portillo's efforts to arrest him.

Affirmative Defense 2:

Qualified immunity is a legal defense for the Court to decide when raised by a non-suit or post-verdict motion. *Ortiz v. Jordan*, 562 U.S. 180, 191 (2011) (holding qualified immunity must be raised by a Rule 50 motion following trial where disputed facts precluded resolution on summary judgment).

**(c) Key evidence Defendants rely on for each affirmative defense:**

Defendants will rely on testimony from Defendants, Sgt. Nash and Officer Portillo, whose own accounts will establish the actions they took in response to the driving maneuvers of Plaintiff during his evasion of Defendants' attempts to detain and arrest him.

Expert testimony from Clarence Chapman, (police practices) will address the reasonableness of the force used and in compliance with accepted law enforcement standards.

**(a) Brief Description of Key Evidence in Support of Defendants' Affirmative Defenses:**

Testimony of the following individuals:

a. Brandon Stevenson (Plaintiff)
b. Lamont Nash (Defendant)
c. Suzanne Portillo (Defendant)
d. Morgan Oakley (CHP Officer)
e. Scott Naramore (Plaintiff's accident reconstructionist)
f. Scott DeFoe (Plaintiff's police practices expert)
g. Clarence Chapman (Defendant's police practices expert)
h. Eric Voss
i. (CHP Officer)
j. Micheal Herrera (CHP Officer)
k. Danny Kuo (CHP Officer)
l. Jennifer Dorrel, Los Angeles Police Dept. Criminalist (N5003)
m. Jake Choi LAPD Officer
n. Frank Flores LAPD Detective
o. Mark Shepherd
p. Chris Buono, Sgt. CHP
q. K. Butler, Sgt. CHP
r. J. Borncamp, Sgt. CHP

2. Videos of the Shooting
   a. MVARS video from Nash and Portillo's patrol unit
   b. MVARS video from Oakley's patrol unit
3. Still Shots from Videos
4. Scene Photographs
5. Photographs of damage to Plaintiff's vehicle
6. CHP MAIT Physical Evidence Diagram

7. Relevant portions of California Highway Patrol Manual 70.6, Chapter 1 – Use of Force
8. Information for L.A. Criminal Case No. BA496776
9. Judgment in L.A. Criminal Case No. BA496776
10. The prior statements and testimony of Defendants, Lamont Nash and Suzanne Portillo evidencing their observations of plaintiff.
11. Evidence gathered at the scene of the incident, including but not limited to, bullet casings, bullet holes in plaintiff's vehicle, photographs, witness statements, statements, dispatch recordings and logs, videos, and the reports and testimony of law enforcement investigators and forensic specialists regarding the evidence.
12. Expert testimony by Clarence Chapman regarding police procedures, including all the underlying evidence he relied on in reaching his conclusions.

**THIRD PARTIES**

There are no third parties asserting claims or defenses in this matter.

**ANTICIPATED EVIDENTIARY ISSUES**

There are no witnesses that are anticipated to be presented by deposition testimony at this time.

Defendants will be filing the following motions in limine:

1. Defendants' Motion *in Limine* No. 1 to Exclude Testimony of Plaintiff regarding his subjective intent, including, but not limited to, his intent to escape between Defendant's patrol unit and the concrete block wall.
2. Defendants' Motion in Limine No. 2 to Preclude Plaintiff from introducing evidence, offering testimony, or making arguments that either: (1) contradict the factual elements of Plaintiff's state court criminal conviction for felony evasion (California Vehicle Code § 2800.2); or (2)

attempt to structurally segment or divide the pursuit timeline to argue that the felony evasion had terminated prior to the officers' use of force.

**OTHER GERMANE ISSUES OF LAW**

Defendants, Lamont Nash and Suzanne Portillo plan to raise the defense of qualified immunity by Rule 50 motion. If raised after the close of evidence, the qualified immunity defense may require special interrogatories. “In a proper case, the use of special jury interrogatories going to the qualified immunity defense is not discretionary with the court.” *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002). “Because a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted.” *Id; see also Lampkins v. Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003) (holding district court properly allowed special interrogatories relating to facts underpinning qualified immunity defense); *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (“We believe that use of special interrogatories in this case resolves the difficulty of requiring the jury to decide ‘what the facts were that the officer faced or perceived’ and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts.”).

There is no law clearly establishing that a law enforcement officer is not entitled to use deadly force when confronted with a subject under the circumstances in this case. Even if Defendants, Lamont Nash and Suzanne Portillo may have been mistaken about the nature of the threat posed by Brandon Stevenson, any such mistake was reasonable. *Anderson v. Creighton*, 483 U.S. at 641; *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Elliott*, 99 F.3d at 644. There is not a “robust ‘consensus of cases of persuasive authority’” on this issue, either. To the contrary, officers are on notice that they are permitted to use deadly force when there is probable cause to believe there is an immediate threat of serious bodily injury or death, which was the

case here.

**BIFURCATION OF ISSUES**

Neither party seeks bifurcation.

**JURY TRIAL**

All issues are triable to a jury (except as discussed in Sections IV and V), and timely demands for jury have been made by all parties.

**ATTORNEYS' FEES**

Defendants do not waive their right to attorneys' fees if the court finds the action was brought in bad faith.

**ABANDONMENT OF ISSUES**

No affirmative defenses have been abandoned by Defendants.

Dated: October 5, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
ROLANDO PASQUALI
Supervising Deputy Attorney General

*/s/ David Klehm*
DAVID KLEHM
Deputy Attorney General
*Attorneys for Defendants*
*Lamont Nash and Suzanne Portillo*

LA2025600488
85941450.docx

## CERTIFICATE OF SERVICE

Case Name: **Stevenson v. Nash, et al.** No. **2:24-cv-11112-ODW(RAOx)**

I hereby certify that on October 5, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **MEMORANDUM OF CONTENTIONS OF FACT AND LAW BY DEFENDANTS LAMONT NASH AND SUZANNE PORTILLO**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 5, 2026, at San Francisco, California.

| | |
|---|---|
| G. Guardado | */s/ G. Guardado* |
| Declarant | Signature |

LA2025600488
45356202